IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MICHAEL LARON FORD                                                                                    PLAINTIFF

v.                      Civil No. 6:13-cv-06133-RTD-BAB

JAIL ADMINISTRATOR
NATHAN GREELEY; JAILER TERRI WEST;
JAILER ANDREW TOLLEFSON;
SHERIFF D. NORWOOD; and
JAILER DOUG WOOD                                                                                     DEFENDANTS

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff, Michael Laron Ford, pursuant to 42 U.S.C. § 1983. Plaintiff is currently incarcerated in the Arkansas Department of Corrections ("ADC") North Central Unit. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Robert T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Currently before me is a Summary Judgment Motion from Defendants. ECF No. 41. After careful consideration, the undersigned makes the following Report and Recommendation.

### I.    BACKGROUND

Plaintiff filed his Complaint on November 14, 2013. ECF No. 1. The Complaint concerns his incarceration in the Ouachita County Detention Center "OCDC." Plaintiff sued all Defendants in both their official and individual capacities. He subsequently filed two Supplements and one Addendum to his Complaint. ECF Nos. 10, 13, 22. Plaintiff also filed 26 Motions. In his Complaint, Supplement, and Addendum documents, Plaintiff alleges a variety of complaints, including unconstitutional conditions of confinement, inadequate nutrition and food service, denial

of access to courts, not responding to and being deliberately indifferent to his health and safety.

Plaintiff requests monetary damages and for all staff to conduct themselves in a more professional and respectful manner, and for staff to be penalized. ECF No. 1, p. 5.

Defendants filed their Summary Judgment Motion on October 14, 2014. ECF No. 41. The Court issued an Order to Show Cause to Plaintiff on May 27, 2015 for failing to respond to the Notice Regarding Summary Judgment Motion. ECF No. 69. Plaintiff responded and requested assistance on June 8, 2015. ECF No. 70. The Court provided Plaintiff with a questionnaire to assist him in responding. ECF No. 71. Plaintiff Responded on June 24, 2015. ECF No. 72.

## II.   LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for

summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**III.   DISCUSSION**

Plaintiff's conditions of confinement claims include: 1) a drain in the shower overflowed on two occasions and contained raw sewage; 2) OCDC failed to provide cleaning supplies for the shower when it overflowed; 3) OCDC did not have any tuberculosis lights; 4) OCDC did not provide adequate cleaning supplies for the pods, and inmates were therefore required to live in unsanitary conditions. ECF No. 72.

Plaintiff's inadequate nutrition and food service claims include: 1) OCDC is required to provide 2200 calories per meal or 7000 calories per day, and did not meet this level of nutrition; 2) food servers did not wear gloves or change gloves while preparing food; detainees would handle trash cans and then handle food, and they did not wear hairnets; 3) meals were served uncovered and food was left in the hallways for an "undisclosed amount of time" before being served. ECF No. 72.

Plaintiff's denial of access to the courts claim is based on the inability to get documents notarized. Plaintiff alleged he was not able to get his 1983 complaint and other documents notarized.. He agrees he was able to send and receive mail from the courts. ECF No. 72.

Plaintiff argues OCDC denied him medical care for a boil on his neck which developed as a result of the unclean shower and living conditions. He alleges he became sick from the "unfit" food, but sick calls went unanswered. ECF No. 72.

Plaintiff alleges grievances were not answered. ECF No. 72.

Defendants argue Summary Judgment is appropriate because 1) Plaintiff did not allege any personal involvement or responsibility by any Defendant for the alleged conditions of confinement claims; 2) Plaintiff never had any face to face interaction with Defendant Greeley or West; 3) none of Plaintiff's conditions of confinement claims rise to a constitutional level; 4) Plaintiff did not allege

any physical injury as a result of the conditions of confinement; 5) Plaintiff provided no proof of unconstitutionally inadequate or unsafe food; 6) there is no constitutional right to the answering of grievances; and 7) Plaintiff identified no policy or custom of Ouachita County to support an official capacity claim. ECF No. 42.

**A.      Official Capacity Claims**

Plaintiff is suing Defendants in both their official and individual capacities. Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998). "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 permit inhumane ones. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994).

In his Response, Plaintiff checked "yes" when asked if an OCDC custom, policy, or practice deprived him of his constitutional rights. ECF No. 72, p. 27. However, Plaintiff was directed to "[e]xplain in detail, the custom, policy, or practice, and how it deprived you of your federal

constitutional rights." Plaintiff did not do so.  ECF No. 72, p. 27.

To the extent some of Plaintiff's allegations could possibly be construed as identifying a custom or policy, those allegations are blatantly contradicted by the record.

Plaintiff's frequent filings with this Court contradict his allegations that the lack of notarization for his documents prevented him from filing with the court. In his deposition, his only allegation of harm was the lack of a notary public "slowed a lot of stuff down," and other inmates were moved away before he could get their statements made into a legal document.  ECF No. 43-6. Plaintiff admitted no documents were rejected by the Court for lack of notarization.  ECF No. 43-1, p. 7.

The OCDC policies in place, Defendant Greeley's affidavit, and Plaintiff's own testimony contradict his allegations of unhygienic conditions of confinement.  Defendants filed the OCDC policies on food service, housing and sanitation, and inmate policies, procedures and inmate rights. Defendants also filed an Affidavit from Defendant Greeley noting the policies were followed. Defendant Greeley acknowledged a temporary backup in a shower. However, he also states it was simply the used shower water that flooded the shower, as the shower lines do not connect to the sewer lines.  This was promptly cleaned and disinfected by ADC 309 Inmates.  ECF No. 44-1. Plaintiff's own testimony states he is currently seeing ADC mental health professionals for a "real bad germ issue. Bad. . . I shower about three to four times in a day because I feel like ick, you know, I get that icky feeling real fast. Cause people walk around, I see somebody touch -- do something, they sneeze or cough, and I ish, I get away." ECF No. 43-1, p. 17.  Plaintiff testified he did not contract tuberculosis. ECF No. 43-1, p. 9.

Plaintiff's allegation and testimony that he is supposed to receive 7000 calories per day is based on a misinterpretation of a USDA publication, and is contradicted by both the food policy

provided by the OCDC and the USDA guidelines. ECF No. 72; 43-1, p. 12. OCDC's food policy states sedentary detainees are to receive a minimum of 2300 calories, while active detainees will receive a minimum of 2700 calories. This is in line with the most recent USDA guidelines, which indicate between 2400-2600 calories for sedentary males aged 19-30, 2200-2400 for men aged 31-50 and 2000-2200 for men aged over 51. http://fnic.nal.usda.gov/dietary-guidance/dietary-guidelines (accessed July 14, 2015.) Nor are Plaintiff's allegations of weight loss from insufficient calories internally consistent. In his Response, he alleged he was "under 200 pounds" when he entered OCDC and was 195 pounds when he entered ADC. ECF No. 72. At his deposition, he testified he "lost over 10 pounds" while in ADC. He testified he was 220 pounds when he entered OCDC and was 215 at the time of the deposition. ECF No. 43-1, p. 16.

Finally, Plaintiff alleged he had filed medical grievances without any response, and was denied copies of his grievances. ECF No. 1. In his Response, Plaintiff referred to his exhibits e, c, d, f, g, h, for grievances. ECF No. 72. Upon review of the 69 pages of attachments with his Response, the Court could find nothing with those labels or which resembled a grievance.[1]  There is no evidence he requested copies of the grievances either. In his deposition, Plaintiff testified he gave some grievances to Defendant Tollefson, but admitted they were not addressed to him. Otherwise Plaintiff testified there was a greivance policy posted but it was not followed. ECF No. 43-1, p. 4. The failure to process grievances, without more, is not actionable under § 1983. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th 1993)(per curiam).

Accordingly, there are no genuine issues of material fact regarding Plaintiff's official capacity

---

[1]There is no evidence he requested copies of the grievances here. He did request copies of the menus and dietary analyses for August 2013 to August 2014. Menus for January 2104 through August 2014 were provided, as were nutritional analyses. ECF No. 72-1, p. 33-45. Thus, it appears that his requests for information from OCDC were successful when they were not overbroad or vague.

claims, and these claims fail as a matter of law.

### B. No Causal Link Between Defendants and Plaintiff's Individual Capacity Claims

"Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370 (1976); *Cotton v. Hutto*, 577 F.2d 453, 455 (8th Cir.1978) (per curiam) (respondeat superior theory does not apply in § 1983 suits)).

Plaintiff has not alleged a causal link between any of the Defendants and his claims. In his questionnaire, he was directly asked to identify how each of the Defendants violated his constitutional rights. For Defendants West, Tollefson, Norwood, and Woods, he provided no information. ECF No, 72, p. 26-27. He indicated Defendant Greeley violated his Eighth and Eleventh Amendment rights, but provided no detail as to exactly how he had done so. ECF No. 72, p. 26. Nor does Plaintiff provide this detail in his Complaint, Supplements, or Addendum.

Accordingly, there are no genuine issues of material fact regarding Plaintiff's individual capacity claims, and these claims fail as a matter of law.

### C. No Verifiable Medical Evidence

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

Deliberate indifference may be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05. However, the "Constitution does not require jailers to handle every medical complaint

as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation"). In evaluating a treatment delay for summary judgment purposes, the court "must accept facts as recited in prisoner affidavits as true..." *Wise v. Lappin*, 674 F.3d 939, 941 (8th Cir. 2012) (citing *Tlamka v. Serrell*, 244 F.3d 628, 634 (8th Cir. 2001.)(taking Plaintiff's statements as true, the record revealed trialworthy issues as to a treatment delay of two months for a broken jaw when prison medical providers had a diagnosis and recommendation for a specialist referral, Plaintiff repeatedly complained of pain and difficulty due to his injury, and the jaw deformity was physically obvious.)

In this case, Plaintiff alleged a lack of care for two medical conditions: a boil on his neck and "real bad" diarrhea and dehydration from consumption of "unfit" food. ECF Nos. 72, p. 10; 43-1, p. 10.

For the boil, he alleges he "put in a sick call and showed numerous staff members the boil on my neck and still my sick call went unanswered and I had to endure the pain and mental anguish until I was able to get back to the ADC." A boil is a skin abscess caused by a staphylococcal infection, which involves a hair follicle and surrounding tissue. Treatment includes drainage and

8

antibiotics. They frequently recur. http://www.merckmanuals.com/professional/dermatologic-disorders/bacterial-skin-infections/furuncles-and-carbuncles-i-i. (accessed July 13, 2015.) They typically present as a hard red painful bump about half and inch in size. Professional medical treatment is indicated only if there is fever or swollen lymph nodes, the skin around the boil turns red or there are red streaks radiating from it, the pain becomes severe, a second boil appears, or the individual is immunocompromised. http://www.webmd.com/skin-problems-and-treatments/guide/boils (accessed July 13, 2015).

     Plaintiff did not allege any symptoms from the boil other than the vague statement of pain and mental anguish. Therefore, it does not appear professional medical treatment was indicated. Even in the event it was, Plaintiff testified the boil was cleared up and he had no recurrence since he had been at the ADC. He did not provide any allegations, testimony, or verifiable medical evidence showing he was treated for a boil at the ADC, or that he suffered any harm as a result of the alleged delayed medical treatment for his boil. .

     Plaintiff also provided no verifiable medical evidence that he suffered from "real bad" diarrhea and dehydration from food poisoning, or suffered harm from delay in treatment for it. At his deposition, Plaintiff was unclear as to whether he suffered from the "real bad" symptoms "once or a few times." ECF No. 43-1, p. 10. When the defense attorney asked him if people could get these same symptoms from sources other than food poisoning, Plaintiff did not provide any facts or allegations as to why he thought his illness was caused by food poisoning. Instead, he interrupted and stated: "I wrote what I wrote for a purpose, because I know it was wrong and they got away with it. And they may get away with it. But eventually I hope somebody will hear me enough to catch them of the things that they're doing cause they were wrong and they know it." This statement, combined with Plaintiff's uncertainty about the number of time he had "real bad" diarrhea serious

enough to cause dehydration, indicate Plaintiff was constructing allegations to call attention to food service procedures he was unhappy with rather than stating facts about an actual illness.

Accordingly, there are no genuine issues of material fact regarding Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs, and these claims fail as a matter of law.

### IV. CONCLUSION

For the foregoing reasons, I recommend Defendants' Motion for Summary Judgment (ECF.No. 41.) be **GRANTED** and that the Defendants be dismissed from this action **with prejudice**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**IT IS SO ORDERED** this 15th day of July 2015.

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE